Mr. Justice TROtteh
delivered the opinion of the court:
This was an action of assumpsit in the usual form, upon a promissory note, payable to the plaintiffs. The suit was brought by an attorney of the bank, and the defendants pleaded in abatement that the attorney was one of the directors of the bank at the time of instituting the suit, and was therefore prohibited from acting as its attorney, by a statute of this state, enacted in 1840. The plaintiffs demurred to the plea, but the court overruled the demurrer, and gave judgment for the defendants. And the cause is brought to this court by appeal.
In support of the demurrer, it is insisted that the act of 1840, did not embrace the present case, because it did not take effect until after the day of the commencement of the suit. And that it is unconstitutional. And also that the plea is bad in point of form. It is true that the act which is relied on in the plea made no provision as to the time when it should take effect, and would therefore under the constitution of the state have no operation until the expiration of sixty days from its passage. But the supplemental act of the same session, provides that the same shall take effect immediately. And although the terms of the provision are confined to the amendment or supplemental law, it must extend back and embrace the original act, or the strange anomaly would exist of an amendment made to a law at the same session going into operation before the law to which it refers, and with which it is connected. It stands as I conceive on the same ground in this respect as if the supplemental law, had been incorporated with the original law, during its passage, by the ordinary mode of amendment. We are hence of opinion, that this law was in force at the time of the institution of the suit.
Is the provision of the act which prohibits directors of a banking corporation from acting as attorneys of the Bank, unconstitutional? In its terms it certainly is not. What motives of policy may have influenced the legislature, in imposing this restraint we do not know, nor is it important that we should be informed, since we must regard the provisions of the act itself, in comparison with the provisions of the constitution, in order to pronounce upon their inconsistency. The constitution, in securing to all persons, the right to be heard in court, by themselves or counsel, surely did not mean that no limitations could be imposed by law, upon *277 the admissibility of attorneys. If so, none of the various regulations adopted from time to time, as to the mode of admitting attorneys to the bar, and their expulsion for improper or criminal behavior, can be sustained. As officers of the courts in which they practice, they are subject to be silenced, and totally disqualified from appearing as attorneys, for improper conduct. Was it the design of the bill of rights to force the attorney in such cases, back upon the courts, whenever the partialities of a suitor might select him? The suitor has an undoubted right to be heard by his counsel, whenever he presents such as are not legally disqualified. This right of the suitor then is not at all inconsistent with the right of the legislature to say who may be attorneys, and in what cases. The law has said, a justice of the peace shall not appear as attorney for any person in the county for which he may be appointed. That no clerk of any court of record shall act as attorney, in the court of which he is clerk, and the same prohibition is extended to other officers. And yet these regulations have never been deemed to be infringements of the right of a suitor to appear by counsel, or of the constitutional rights of the several persons who are placed under its operation. May not the legislature then, say that no person holding the office of a bank director shall appear as attorney for the Bank? We think they may unquestionably. If it should so happen that a director was also a stockholder of the Bank, he might, unquestionably appear and prosecute or defend suits in which the Bank was interested. He might exercise that right, not as an attorney, but as a party, and the act could not embrace him.
We will next notice the objection to the plea. The courts have never been disposed to favor mere dilatory pleas, and have therefore required the utmost accuracy in framing them. They must be certain to every intent, and must have a proper commencement and conclusion. And the slightest deviation either in the commencement or conclusion from the settled forms, will be fatal. Therefore if the plea conclude by praying “judgment of the writ and declaration,” in a case when it should conclude with a prayer that “ the suit may remain without day,” &e. or “ if the court will further proceed,” &c. or “ if the plaintiff ought to be answered,” &c. it will be bad. 1 Chitty Plead. 495. The plea in *278 this case is clearly to the disability of the plaintiffs to sue by the particular attorney on record, as much so as one who seeks to abate a suit by an infant who has declared by attorney. And it is a fettled rule that if a plea is to the ability of the plaintiff to sue, the plea should conclude with a prayer "if the plaintiff ought to be answered/’ or “ whether the defendant ought to be compelled to answer,” &c. ■ And a plea of this kind concluding merely to the writ would be bad. 1 Chitty, 495; and the authorities referred to. In the present case the plea concludes with praying "judg-* ment of the writ and declaration, and that the same may be quashed.” It is therefore clearly defective, and for this reason, the judgment must be reversed, and the cause remanded for further proceedings. And that the defendant answer over, to the merits.